**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesse Dupris, Jeremy Reed<br><br>    Plaintiffs,<br><br>v.<br><br>Selanhongva McDonald, et al.,<br><br>    Defendants | NO. 08-8132-PCT-PGR<br>     08-8133-PCT-PGR<br><br>**ORDER** |

The Plaintiffs in this consolidated action filed suit against two tribal police officers of the White Mountain Apache Tribe ("Tribe") and five Bureau of Indian Affairs agents ("BIA" or the "Individual Defendants")[1] in their individual capacities for civil rights violations under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b)(1) and 2671, et seq.[2] Plaintiffs argue that their Fourth, Fifth, and Fourteenth Amendment rights were violated when they were unreasonably seized, wrongfully arrested, and then maliciously prosecuted in connection with a series of rapes which occurred on the

---

[1] The Individual Defendants are McDonald, Proctor, Lopez, Hernandez, and Hawkins. The two tribal officers did not join in this Motion to Dismiss, as they are represented by separate counsel.

[2] Plaintiffs contend in the FTCA claim that Defendant United States is responsible for the actions of the Individual Defendants. The FTCA claims have been briefed in the United States' separate Motion to Dismiss. (Doc. 18)

White Mountain Apache Indian Reservation ("Reservation"). Plaintiffs contend that the actions of the Individual Defendants constituted those violations.

Currently before the Court is the Motion to Dismiss filed by Defendants McDonald, Proctor, Lopez, Hernandez and Hawkins. They seek to dismiss the Bivens claims filed against them by Plaintiffs Jesse Dupris (Dupris) and Jeremy Reed (Reed) on the ground that Plaintiffs have failed to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Individual Defendants contend that the Bivens claims should be dismissed because they are entitled to qualified immunity for the following reasons: (1) they were not personally involved in the alleged violation of Plaintiffs' constitutional rights and *respondeat superior* liability is not a basis for recovery in Bivens suits, (2) probable cause existed at the time of the arrests and prosecutions and (3) the alleged conduct of the Individual Defendants did not violate a clearly established constitutional right.

As a preliminary matter, the Court will briefly address the "informational disadvantage" assertion made by Plaintiffs. After considering the argument set forth by Plaintiffs and the record as a whole, the Court finds that Plaintiffs are not and have not been at an informational disadvantage during this lawsuit. Plaintiffs filed this suit, they have had access to the criminal files, police reports, court documents, tribal court records, charge sheets, they were present during the criminal trials, and as they put it, the arrests were "reported locally, statewide, and nationally." Accordingly, the Court finds that no informational disadvantage exists.

**BACKGROUND**[3]

**Dupris**

Beginning in or about November 2005, there were a series of rapes on the Reservation. They were not completely identical, however there appeared to be similar

---

[3] The background facts were ascertained strictly from the Amended Complaints.

characteristics: (1) the rapist generally wore dark clothing with the words "police" on his shirt or cap, (2) often, the rapes occurred in an abandoned house near a cemetery in Whiteriver, and (3) the victims were generally teenagers.

On or about September 21, 2006 investigators believed they had suspects for these attacks. BIA Special Agent Tino Lopez interviewed White Mountain Apache police officer Michelle Young. ("Young"). Young reported to Lopez that on a Saturday night in August, "possibly the 15th," she and two White Mountain Apache Housing Authority ("WMAHA") security officers responded to a domestic call in the Chinatown community in Whiteriver.[4] She stated that while on patrol later that evening, she saw Dupris (not in his vehicle) wearing clothing with the word "security." She reported that she saw him change back into his WMAHA shirt. Investigators believed that they had their first suspect in their ongoing investigation. They proceeded to create a photo lineup. Thereafter, investigators revealed the line-up to various victims and witnesses. Victim L. identified Dupris' picture from the line-up after "examin[ing] the photo spread for approximately 13 minutes." Myron M., a witness to the precursor of the Victim A. assault, also pointed to Dupris from the photo line-up, as did Victim L.A.[5]

On October 18, 2006, "the investigators" sought a warrant to search Dupris' student housing and his vehicle. The investigators were searching for items that the assailant was described as using during his attacks. A search warrant was executed on October 20, 2006. The total evidence seized included one black flashlight, one fingernail clipper, "one boxer with a red stain," and Dupris' keys. The investigators arrested him the same day and charged him with numerous crimes.

On February 20, 2007, Judge Armstrong dismissed with prejudice all of the charges

---

[4] One of the officers who responded with Young was Jesse Dupris (Dupris).

[5] The Complaint states that "[n]one of the other victims or witnesses were able to identify Mr. Dupris." However, it does not state how many other victims were asked to identify Dupris.

against Dupris. Dupris alleges that his arrest was reported locally, statewide, and nationally. In addition to arresting Dupris, he contends that the Individual Defendants maliciously advanced the prosecution of Dupris at least in part to disguise prosecutors' and investigators' own "inept investigation." However, there are no specific allegations regarding malicious prosecution as to any of the Individual Defendants.

**Reed**

In his Amended Complaint, Reed contends that there was no evidence linking him to the crimes. As a result, he argues that his arrest was made without probable cause and with malice.

On or about Saturday, March 11, 2006, 16-year old Jane Doe was at a basketball tournament with some friends in White River, Arizona. Jane Doe had been consuming a flavored alcoholic beverage. She indicated that by the time the incident at issue occurred, she was at least somewhat intoxicated, to what degree is unknown.

Jane Doe and her friends left the gymnasium and went to a trailer belonging to one of the friends. Thereafter, they began to walk to the home of another friend, when they were stopped by an adult male wearing a cap that had written on it "police." He was also wearing a mask that "covered half of his face from the eyes down to his chin." This individual eventually singled out Jane Doe from the group, claiming that he had a warrant to take her with him. He then took her to a nearby abandoned house. There, he began to grope her, at which time Jane Doe attacked the man and was able to escape.

The following Monday (March 13, 2006), Jane Doe reported the incident to the police. She provided two officers with a brief statement as to what had occurred. Jane Doe reported that her mother had attempted to contact the White Mountain Apache Police Department "several times" thereafter, "but they always told her they were too busy."

After six months, Molly Hernandez, a Special Agent with the BIA, again interviewed Jane Doe. During the interview, Jane Doe indicated that she might be able to recognize her

attacker if she saw him again. She stated that "she can only remember the guy had 'hairy eye brows.'"

On September 22, 2006, Special Agents Perry Proctor and Tino Lopez took a photo line-up to Jane Doe's school, which included a photograph of Reed (position 4). Jane Doe looked at the photo spread and indicated that both the individuals at positions 4 and 6 looked like the person who had assaulted her. With respect to Reed's photo, she stated that "she could not say if it was him or not," but indicated that the eyebrows looked the same.

It is Reed's contention that on October 20, 2006, based upon Jane Doe's identification, White Mountain Apache Police Officer Joshua Anderson[6] *and others*, with weapons drawn, arrested Reed at his home. He was charged with numerous felonies, including child abuse, molestation of a child, sexual abuse, unlawful restraint, assault to commit rape, and stalking. There are no specific allegations regarding malicious prosecution as to any of the Individual Defendants.

On April 27, 2007, Judge Fall dismissed with prejudice all of the charges against Reed. Like Dupris, Reed contends that his arrest was widely reported among local, state, and national newspapers as well as other media outlets. It is Reed's contention that his prosecution was done maliciously, as least in part to disguise what Reed considers prosecutors' and investigators' "inept investigation."

**LEGAL STANDARD AND ANALYSIS**

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), Rule 8 does not require detailed factual allegations. However, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986). A pleading that merely provides "labels and conclusions" or "a

---

[6] Anderson is not a party to this Motion to Dismiss.

formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Furthermore, a complaint that provides strictly "naked assertion[s]" devoid of "further factual enhancement" will not suffice.[7] Id. at 557. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter, that when accepted as true, states "a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that *the defendant is liable for the misconduct alleged*." Id. at 556. (Emphasis added). The plausibility standard requires showing more than a sheer possibility that a defendant has acted unlawfully. Ibid. Despite having to take all of the factual allegations in the complaint as true for the purposes of a motion to dismiss, the court is not "bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted). Id. at 555.

To begin with, Plaintiffs maintain that the actions of the Individual Defendants (described in the background section above) constituted an unreasonable seizure of the Plaintiffs in violation of their Fourth Amendment rights. They further contend that the Individual Defendants actions amounted to the wrongful arrest and prosecution of Plaintiffs in violation of their due process rights pursuant to the Fifth and Fourteenth Amendments. However, upon careful review of the Complaints, it is apparent that the allegations are based upon simple recitations of Plaintiffs' respective accounts of what occurred during the course of the investigations, which are speculative and at best amount to mere possibilities of unlawful actions. The critical elements missing from these Complaints are the factual allegations necessary to establish liability for *each individual defendant*. Twombly, 550 U.S. at 555-557. The plausibility standard requires showing more than a sheer possibility that a

---

[7] While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).

defendant has acted unlawfully. Id. at 556. Without specifically articulating which defendant did what to whom, it is impossible to establish whether the allegations plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). Accordingly, the Complaints fail to plead sufficient facts to state Bivens claims against each of the Individual Defendants. As articulated below, for the same reason, the Plaintiffs fail to satisfy the first element of the two-prong test for qualified immunity. Therefore, on that basis as well, the Individual Defendants are entitled to dismissal of the Bivens claims.

**Qualified Immunity**

The Individual Defendants contend that Plaintiffs' Bivens claims should be dismissed on the grounds that they are entitled to qualified immunity. The qualified immunity doctrine enunciated in Harlow v. Fitzgerald, 457 U.S. 800 (1982) was created to shield government officials sued in their individual capacities from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818; Morgan v. Morgensen, 465 F.3d 1041, 1044 (9th Cir.), amended, 2006 WL 3437344 (9th Cir. Nov. 30, 2006).

In Saucier v. Katz, 533 U.S. 194, the United States Supreme Court established a two-prong approach for determining whether qualified immunity applies to a given situation. Viewed in the light most favorable to the plaintiff, the court must decide whether *the facts alleged* show that the *individual official's conduct* violated the Plaintiffs' constitutional rights. Saucier v. Katz, 533 U.S. at 201. (Emphasis added). If Plaintiffs' allegations fail to establish a violation of the Constitution, the claims must be dismissed. Id. If the allegations support a claim that officials violated a constitutional right, the Court must determine

whether that right was "clearly established" as measured by the "specific context of the case, not as a broad, general proposition." Id.; see also Skoog v. County of Clackamas, 469 F.3d 1221, 1229-30 (9th Cir. 2006). The dispositive inquiry in considering the second prong is whether it would be clear to a reasonable official that the conduct was unlawful in the specific situation. Saucier, 533 U.S. at 202 (citations omitted). Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. Hunter v. Bryant, 502 U.S. 224, 227 (1991). In Pearson v. Callahan, 129 S.Ct. 808, 818, the Court held that lower courts have discretion to decide which of the two prongs to consider first.

Thus, to overcome qualified immunity, a plaintiff "must allege facts, not simply conclusions, that show that *an individual was personally involved* in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). (Emphasis added). In the pending Complaints, Plaintiffs have failed to allege specific conduct on the part of each of the Individual Defendants that would amount to a constitutional violation. For example, in Mr. Dupris' Complaint, he alleged that Lopez interviewed the former White Mountain Apache police officer that implicated Dupris. A routine police interview does not amount to a constitutional violation. The Complaint then proceeds to lump together "investigators" and then "Defendants" without articulating who the specific investigators were or who the specific Defendants were that participated in the alleged conduct described therein.

In Mr. Reed's Complaint, he alleges that Hernandez interviewed one of the victims, Proctor and Lopez took a photo lineup to the victim's school (which included a photo of Mr. Reed), Anderson "and others" arrested Reed at his home, and McDonald made a statement to the press regarding White Mountain Apache Housing Authority security officers' enhanced opportunity to commit crimes in the particular subdivision in which the crimes occurred. Under Iqbal, none of the foregoing satisfy the plausibility standard. Iqbal, 129 S.Ct. at 1951. The remaining assertions were directed at the conduct of "defendants" as a group. Plaintiffs have merely established that an investigation by the Defendants involving the Plaintiffs ensued. However, the Complaint does not set forth specific allegations of individual misconduct against the Individual Defendants that can be construed as plausible constitutional violations. Id. Therefore, Plaintiffs have failed to satisfy the first prong of the qualified immunity test.

Furthermore, any assertion that the Individual Defendants supervised the investigation and therefore their participation and liability should stem therefrom is without merit as *respondeat superior* liability does not lie in Bivens actions. See Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir.1991). Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. Vicarious liability is inapplicable to Bivens suits, therefore *a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution*. Ashcroft v. Iqbal, 129 S.Ct 1937, 1948 (2009)(emphasis added).

1    Here, both Reed and Dupris have failed to adequately allege that the Individual

Defendants, through their own actions, have violated Plaintiffs' constitutional rights.

Also before the Court is Defendant United States' Motion to Dismiss. The Court will briefly address the jurisdictional issue raised in the United States' Motion to Dismiss. (Doc. 18.) A timeline of events is necessary to determine whether jurisdiction is proper. On February 29, 2008, Jesse Dupris submitted his FTCA claim to the Bureau of Indian Affairs. On March 6, 2008, Jeremy Reed submitted his FTCA claim to the Bureau of Indian Affairs. On October 20, 2008, the last day of the two-year statute of limitations on their Bivens claims, Plaintiffs filed complaints alleging claims under Bivens, naming only the Individual Defendants, and identifying only constitutional claims as the claims for relief. On October 29, 2008 the BIA denied Plaintiffs' administrative claim. Thereafter, on November 6, 2008, Plaintiffs filed Amended Complaints, naming for the first time the United States as a defendant, and raising common law tort claims for the first time.

The United States asserts that Plaintiffs failed to exhaust their administrative claims and thus this Court does not have jurisdiction to hear their FTCA claims. This Court disagrees. Based on the timeline of events, Plaintiffs' acts of amending their complaints and adding the United States and the FTCA claims *following* the exhaustion of their administrative process is akin to instituting a new action against the government. Wong v. Beebe, 2002 WL 31548486 (D.Or. 2002), aff'd in part and rev'd in part on other grounds, 373 F.3d 972 (9th Cir. 2004). In all but one case cited by the government, the plaintiff had filed a *premature* FTCA complaint, which is a distinctly different scenario than the present

circumstances. The only other case cited by Plaintiffs in support of their position, Boatwright v. Chipi, 2008 WL 819315 (S.D. Ga. 2008), held that an inmate could not amend his Bivens complaint to add a post-exhaustion FTCA claim, but was then rejected by another district court in Georgia on the ground that the reasoning in Boatwright is not consistent with the text or purpose of the exhaustion requirement. The Court notes that Boatwright is neither binding on this Court nor persuasive. The Court finds that Plaintiffs did exhaust their administrative remedies. Given that it was the eve of expiration of the statute of limitations for the Bivens claims and Plaintiffs had not received information from the BIA regarding their FTCA administrative claims, Plaintiffs were essentially forced to file their Bivens Complaints. Thereafter, they filed amended complaints within the time provided as of right. Had they not, they would have had to file a separate suit against the government and then moved to consolidate the actions and the end result would be no different substantively then the current position. Accordingly, this Court has jurisdiction to hear the FTCA claims should they ultimately come before this Court.

IT IS HEREBY ORDERED that the Motion to Dismiss the Bivens claims filed against Defendants in the First Amended Complaint is GRANTED.[8] (Doc. 19.)

IT IS FURTHER ORDERED that Plaintiff's request to file a Second Amended Complaint in the event that the Court should grant the Motion to Dismiss is GRANTED.

---

[8] The decision applies equally to Tribal Defendants Massey and Anderson. Despite the fact that they were not joined in this motion, the analysis and ultimate conclusion applies equally to them. Accordingly, the Bivens claims are dismissed as to all Defendants.

Plaintiffs shall file their Second Amended Complaint no later than **Friday, February 19, 2010.**

IT IS FURTHER ORDERED that in light of the future filing of a Second Amended Complaint, the United State's pending Motion to Dismiss (Doc. 18) is **DENIED in part with prejudice** as to the jurisdictional issue and **DENIED in part without prejudice** as to the FTCA claims.[9]

DATED this 13th day of January, 2010.

_____
Paul G. Rosenblatt
United States District Judge

---

[9] An amended pleading supersedes the original pleading such that after the amendment, the original pleading no longer performs any function and is thereafter treated as non-existent. Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir.1992).