**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jesse Dupris, et al. | ) | NO. 08-8132-PCT-PGR |
| Plaintiffs | ) ) | 08-8133-PCT-PGR (CONSOLIDATED) |
| v. | ) ) | **ORDER** |
| Selanhongva McDonald, et al., | ) ) | |
| Defendants. | ) ) | |

Before the Court are the following motions: Individual Defendants' Motion for Summary Judgment (Doc. 169) and Defendant United States' Motion for Summary Judgment as to Plaintiffs' FTCA Claim (Doc. 168), both of which are joined in part by Defendants Massey and Anderson (Docs. 183, 184), and Plaintiffs' Motion for Partial Summary Judgment Re: Federal Employee Status of Tribal Officer Defendants (Doc. 170).

For the reasons set forth below, the Court will grant summary judgment for the Individual Defendants and the United States. The Court will deny Plaintiffs' motion for partial summary judgment.[1]

## <u>INTRODUCTION</u>

Plaintiffs Jesse Dupris and Jeremy Reed filed suit against tribal police officers of the White Mountain Apache Tribe and agents of the Bureau of Indian Affairs ("BIA") in their

---

[1]     Plaintiffs' requests for oral argument (Docs. 192, 196) will be denied because the parties have fully briefed the issues and oral argument will not aid in the Court's decision. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

individual capacities, alleging civil rights violations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b)(1) and 2671, et seq. Plaintiffs claim that their Fourth, Fifth, and Fourteenth Amendment rights were violated when they were unreasonably seized, wrongfully arrested, and maliciously prosecuted. Plaintiffs contend that the actions taken by the Individual Defendants constituted those violations.

## **FACTUAL BACKGROUND**

In early September 2006, the BIA created the "Operation Mountain Line" Task Force to investigate a series of sexual assaults occurring on the White Mountain Apache Indian Reservation in Whiteriver, Arizona. The crimes were committed by a man or men who posed as police or security officers. The majority of the fifteen victims were minor females assaulted at night on a trail near an abandoned house.

BIA Agents Molly Hernandez, Tino Lopez, Perry Proctor, Michael McCoy, Duston Whiting, and Warren Youngman were assigned to the Task Force. McCoy was the Incident Commander, Youngman the Assistant Incident Commander, and Whiting the case agent. Perphelia Massey and Joshua Anderson, officers from the White Mountain Apache Police Force, were also assigned to the Task Force.

As discussed in more detail below, and described in a previous order (Doc. 48), the Task Force investigation included interviews with victims and witnesses, some of whom identified Plaintiffs as their attackers.

On October 20, 2006, McCoy and Youngman met with tribal prosecutor Paula King to see whether the Tribe wanted to pursue tribal charges against Plaintiffs. King agreed to charge and prosecute Plaintiffs and gave permission to McCoy and Youngman to have Plaintiffs arrested on tribal charges.

That same day, Officer Anderson arrested Reed at his home on the Reservation.

Officer Anderson arrested Durpis at the Hon-Dah police substation on the Reservation. Individual Defendant Martinez was present at Reed's arrest in a back-up capacity, but did not participate because Reed did not resist arrest.

On October 24, 2006, King modified the tribal charges against Reed and signed the complaint. On October 25, 2006, at the arraignment, King tried to modify the tribal charges against Dupris but the Tribal Court denied her request and determined that Plaintiffs should continue to be held in tribal jail.

On November 1, 2006, Reed was released on bond by the Tribal Court. Dupris was released on November 12.

On November 16, 2006, King moved to dismiss the charges against Reed "without prejudice" in case additional evidence was provided. On February 20, 2007, King moved to dismiss the charges against Dupris "with prejudice." On April 27, 2007, King's request to change Reed's dismissal of charges to "with prejudice" was granted.

## SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party, who must demonstrate the existence of a factual dispute and that the fact in contention is material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties'

differing versions of the truth at trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits or declarations, if any. *See* Fed. R. Civ. P. 56(c). The judge's function is not to weigh the evidence and determine the truth but to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. However, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 248–49.

## INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Individual Defendants Hernandez, Lopez, and Proctor, joined by Massey and Anderson, move for summary judgment on Plaintiffs' *Bivens* claims.[2] (Docs. 169, 183.) The Individual Defendants argue that they are entitled to qualified immunity because they were not personally involved in the alleged violation of Plaintiffs' constitutional rights. They also contend, along with Massey and Anderson, that no constitutional violation occurred because the arrests were supported by probable cause and because the existence of probable cause defeats the malicious prosecution claim. Plaintiffs filed a response opposing the motion. (Doc. 191.)

## I.    Qualified Immunity Doctrine

Qualified immunity is an affirmative defense. The defendant asserting qualified immunity bears the burden of both pleading and proving the defense. *Gomez v. Toledo*, 446

---

[2]    The *Bivens* claims against BIA Agent McDonald were dismissed January 26, 2011 (Doc. 121); the claims against Agents McCoy and Youngman were dismissed on June 27, 2011 (Doc. 158). Plaintiffs concede that the claims against Individual Defendant Daniel Hawkins should also be dismissed. (Doc. 191 at 5 n.1.)

- 4 -

U.S. 635, 640 (1980). In the context of a motion for summary judgment in a § 1983 action, the defendant bears the burden of establishing that there is no genuine issue of material fact to be resolved regarding his immunity. *See Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005).

The determination of whether a law enforcement officer is entitled to qualified immunity from a plaintiff's § 1983 claims involves a tiered analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Moreno*, 431 F.3d at 638. The first step requires the court to determine if any of the plaintiff's constitutional rights were violated, viewing the facts in the light most favorable to the plaintiff. *Id.*; *Moreno*, 431 F.3d at 638; *Johnson v. County of Los Angeles*, 340 F.3d 787, 792 (9th Cir. 2003). If no constitutional right was violated, there is no necessity for further inquiry. *Saucier*, 533 U.S. at 201.

The second step requires the court to determine if the violated right was clearly established at the time of the violation. *Moreno*, 431 F.3d at 638. The contours of the violated right must have been clear enough that a reasonable law enforcement officer would have understood that what he was doing violated the individual's constitutional rights. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Moreno*, 431 F.3d at 638.

The court must consider the "objective legal reasonableness" of the officer's conduct, rather than his subjective motivation, when determining if the officer is entitled to qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *Brittain v. Hansen*, 451 F.3d 982, 988 (9th Cir. 2006); *Butler v. Elle,* 281 F.3d 1014, 1031 (9th Cir. 2002). "A defendant's good faith or bad faith is irrelevant to the qualified immunity inquiry." *Burk v. Beene*, 948 F.2d 489, 494 (8th Cir. 1991).

The plaintiff bears the burden of establishing that the actions complained of constituted a violation of his constitutional rights. *Hydrick v. Hunter*, 466 F.3d 676, 705–06 (9th Cir. 2006). He also bears the burden of establishing that the contour of the underlying constitutional right was clearly established at the time of the alleged misconduct. *Id.*; *Galvin*

- 5 -

1    *v. Hay*, 374 F.3d 739, 745 (9th Cir. 2004).

2    **II.    Analysis**

3         **A.    Personal Involvement**

4         In a prior order, the Court dismissed the *Bivens*' claims set forth in Plaintiffs' First

5    Amended Complaint, finding that Plaintiffs "failed to adequately allege that the Individual

6    Defendants, through their own actions, . . . violated Plaintiffs' constitutional rights." (Doc.

7    48 at 10.) The Court explained that actions undertaken by the Individual

8    Defendants—interviewing witnesses and victims and showing them photographic line-

9    ups—did not amount to a constitutional violation and that Plaintiffs' remaining assertions

10   were directed only at the conduct of the "'defendants' as a group." (*Id.* at 9.)

11        The allegations in the Fourth Amended Complaint fail for the same reasons. Plaintiffs

12   do not allege that Hernandez, Lopez, or Proctor, as individuals, played any role in the

13   decisions to arrest and prosecute Plaintiffs. None of the Individual Defendants was present

14   for the arrest of Plaintiff Dupris, and only Hernandez was present, in a back-up role, at

15   Reed's arrest. (*See* Doc. 167, Ex. 4.)

16        Plaintiffs argue that the false arrest and malicious prosecution were group efforts and

17   therefore the Individual Defendants are liable under the "integral participant" theory. (Doc.

18   191 at 5.) According to this principle, liability may attach to anyone who "set[s] in motion

19   a series of acts by others which the actor knows or reasonably should know would cause

20   others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir.

21   1978). Plaintiffs argue that the decisions to arrest and prosecute them were made "as a

22   group" by the Task Force. (Doc. 191 at 6.) Therefore, according to Plaintiffs, the Individual

23   Defendants, as members of the Task Force, are liable as integral participants in the arrest and

24   prosecution. (*Id.*)

25        The Individual Defendants' membership in the Task Force, which was headed by

26   Incident Commanders McCoy and Youngman, is insufficient to show personal involvement.

27

28                                    - 6 -

To overcome qualified immunity, a plaintiff "must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see Jones v. Williams*, 297 F.3d 930, 937 (9th Cir. 2002) ("we require individual participation, not simply being present or being a member of a team"); *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (liability under the integral participation doctrine requires "some fundamental involvement in the conduct that allegedly caused the violation"). Plaintiffs have advanced no facts showing that the Individual Defendant's personally participated in the alleged constitutional violations.

The cases relied on by Plaintiffs, *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008), and *Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004), do not support Plaintiffs' interpretation of the integral participant doctrine. In *Beck*, a false arrest case, the court ruled that a police chief was not entitled to qualified immunity despite the fact that he "did not sign or prepare the police report, the criminal complaint, or the declaration submitted to secure the warrant." *Id.* at 871. In finding the chief liable, the court explained that despite the clear absence of probable cause, the chief "failed to do anything to stop the process that led to the arrest, but instead abetted it and threatened [others] when they attempted to get involved." *Id.* at 872. In fact, the chief not only initiated the investigation and had the matter referred to the prosecutor, he was also one of "purported victims" of the plaintiff's threatening speech. *Id.*

*Boyd* was an excessive force case. The court held that every officer who provided armed backup for another officer who unconstitutionally deployed a flash-bang device to gain entry to a suspect's home could be held liable because "every officer participated in some meaningful way" in the arrest and "every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flashbang was to be deployed." *Boyd*, 374 F.3d at 780.

None of the circumstances characterizing the police chief's personal involvement in *Beck* or the officers' actions in *Boyd* are present with respect to the roles played by Hernandez, Lopez, and Proctor in Plaintiffs' arrest and prosecution. The record is clear that they did not supervise the Task Force, make the probable cause determinations, or initiate the arrest or prosecution; those decisions were made by Incident Commanders McCoy and Youngman. (*See* Doc. 167, ¶¶ 68, 77, 82–83; Doc. 193 at 79, 92–93; *id.*, Exs. 4, 5, and 8.) The Individual Defendants simply carried out routine investigative duties and were present at Task Force briefings. Neither this activity, nor Hernandez's presence at Reed's arrest, amounts to "fundamental involvement" in the conduct that resulted in the alleged constitutional violation. *Blankenhorn*, 485 F.3d at 481 n.12. Therefore, Plaintiffs' conclusory assertions of wrongdoing on the part of the Task Force are insufficient to demonstrate that Proctor, Hernandez, and Lopez personally violated any of their constitutional rights.

Unlike the Individual Defendants, Massey and Anderson, however, did personally participate in the arrests. Nevertheless, as discussed next, they are entitled to qualified immunity if the arrests were supported by probable cause.

## B. Probable Cause

The Individual Defendants, along with Massey and Anderson, contend that no constitutional violation occurred, and therefore they are entitled to qualified immunity, because the arrests were supported by probable cause. (Doc. 169 at 7.) "The test for whether probable cause exists is whether 'at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense.'" *Blankenhorn*, 485 F.3d at 471 (quoting *United States v. Jensen,* 425 F.3d 698, 704 (9th Cir. 2005)); *Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003) ("Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair

probability that [the suspect] had committed a crime.") (quoting *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999)).

Because qualified immunity protects all "but the plainly incompetent or those who knowingly violate the law," a law enforcement officer will be immune to claims based on an arrest without probable cause unless "it is obvious that no reasonably competent officer" would have believed that there was probable cause to arrest. *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see Crowe v. County of San Diego*, 608 F.3d 406, 433–34 (9th Cir. 2010). Thus, qualified immunity applies not only to officers who correctly determine that probable cause exists, but also to officers who reasonably but mistakenly conclude that it does. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

"The existence of probable cause turns on the information known to the officers at the moment the arrest is made, not on subsequently-received information." *Spiegel v. Cortese*, 196 F.3d 717, 725 (7th Cir. 1999). The fact that charges are ultimately dismissed does not mean the arrest was not supported by probable cause. *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

Here, the Court concludes that the Individual Defendants, and tribal officers Massey and Anderson, could have reasonably believed that probable cause existed to arrest Plaintiffs.

At the time they made the probable cause determination to arrest Dupris, Agents McCoy and Youngman were aware of various information suggesting Dupris' involvement in the attacks. (*See* Doc. 167, Exs. 7, 10.) Dupris had recently been a security guard for the White Mountain Apache Housing Authority ("WMAHA"), and in that capacity he had access to the locations and equipment used by the attacker, including handcuffs. (*Id.*) Dupris lived in the "Ben Gay" housing area, near the trail where the assaults occurred. (Doc. 167, Exs. 4, 7, 10.) Michelle Young, a former tribal police officer, had observed Durpis on patrol one night around the time of one of the attacks. (Doc. 167, Exs. 6, 7, 10.) Wearing a shirt with the word "security" on it, he was running from a trail to his vehicle. (*Id.*) Young then saw

Dupris change back into his WMAHA shirt. (*Id.*) Two victims, L.T. and L.B., identified Dupris from a photo lineup (*id.*, Exs. 6, 7, 8, 10), as did M.M., an eyewitness to another assault. (*Id.*, Exs. 7, 10.) Other victims provided physical details of their attacker that matched those of Dupris. (*Id.*, Exs. 3, 4, 6, 7, 8, 10.) Dupris had lied about his residence, and his polygraph answers were deemed "deceptive" by an FBI examiner. (*Id.*, Exs. 7, 10.) Victim C.D. stated that her attacker did not have the accent of an Apache man, had a "light complexion," and was not Apache. (*Id.*) Dupris is Irish and Sioux, not Apache, and had lived off of the Reservation for several years. (*Id.*) Dupris' supervisor believed that he had once gotten into trouble when he worked for WMAHA for "having a young woman in his work vehicle." (*Id.*)

When they made the decision to arrest Reed, McCoy and Youngman were aware of the following information. When shown a photo lineup, victim B.L. identified Reed as her attacker. (Doc. 167, Exs. 6, 7, 10.) Reed matched the height and weight descriptions provided by several victims and witnesses, and matched descriptions that the suspect had "hairy" or "bushy" eyebrows. (*Id.*, Exs. 4, 6, 7, 10.) Like Dupris, he lived in the "Ben Gay" housing area and had worked as a WMAHA security guard. (*Id.*, Exs. 7, 10.) He was evasive and refused to speak with the Task Force or come in for an interview. (*Id.*) Dupris identified Reed as a possible suspect based on the similarity of their appearance. (*Id.*) Reed's supervisor said he was the only security guard who had a flashlight with a blue light, which matched the type of flashlight used by the suspect. (*Id.*) Reed admitted he had been accused "of picking up girls in different areas, and having two way radios." (*Id.*) Reed is an Apache who has lived on the Reservation his entire life, and victim B.L., who identified Reed from the photo lineup, stated that her attacker had a "rez boy" voice. (*Id.*)

Finally, prior to the arrests, the United States District Court had authorized a search of Dupris' vehicle and residence, and the tribal prosecutor, after being briefed by McCoy and Youngman, authorized the arrest of Dupris and Reed on tribal charges. (*Id.*)

Plaintiffs note inconsistencies in the accounts offered by the victims and witnesses, and challenge the reliability of their identifications.[3] While some of Plaintiffs' concerns are well taken, they are not sufficient to show that Task Force agents were incompetent or knowingly violated the law when they determined that probable cause existed to arrest Plaintiffs. "Nothing suggests that a victim's report must be unfailingly consistent to provide probable cause. The credibility of a putative victim or witness is a question, not for police officers in the discharge of their considerable duties, but for the jury in a criminal trial." *Spiegel*, 196 F.3d at 725; *see Torchinsky v. Siwinski,* 942 F.2d 257, 262 (4th Cir. 1991) ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker."); *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) ("An eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.") (interior quotations omitted); *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (information provided by a victim is sufficient to establish probable cause even where the suspect and victim provide different versions of events, "unless the circumstances raise doubt as to the person's veracity").

The Task Force had no reason to believe the witnesses were lying or mistaken in their identifications and descriptions of the suspects. Once probable cause to arrest Plaintiffs was established through this information, the Task Force was under "no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence." *Spiegel*, 196 F.3d at 723.

---

[3]    These inconsistencies principally relate to the witnesses' descriptions of the suspects' height and build. While both Dupris and Reed are six feet, four inches tall, several witnesses described their attacker as being under six feet. (*See, e.g.*, Doc. 193 at 8–14.) However, one of these witnesses, victim L.B., positively identified Plaintiff Dupris. (*See id.* at 15.) Plaintiffs  also note that victim L.T. and witness M.M., both of whom identified Dupris, had been drinking at the time of the incidents, as had victim B.L., who identified Plaintiff Reed as her attacker. (*See id.* at 10–11.)

Moreover, the eyewitness identifications in this case did not stand alone but were supported by corroborating circumstantial evidence, including the fact that Plaintiffs were employed as security guards, were familiar with the area where the assaults took place, and were evasive or deceptive during their interactions with the agents; in addition, Dupris was seen running from a trail at night and then changing his clothes. The information gathered by the Task Force persuaded the tribal prosecutor to approve the arrest and initiate the prosecution of Dupris and Reed. The Court therefore concludes that the totality of the evidence before the Task Force was sufficient to support a reasonable belief that probable cause existed to arrest Plaintiffs. The Task Force agents were not required to delay the arrests "until after they have resolved each and every inconsistency or contradiction in a victim's account." *Spiegel*, 196 F.3d at 725.

## C. Malicious Prosecution

The existence of probable cause also defeats Plaintiffs's malicious prosecution claim. There is a presumption that a prosecutor filing a criminal complaint exercised independent judgment in determining that probable cause existed to arrest the accused, thereby breaking the chain of causation between arrest and prosecution and immunizing the investigating officers from damages suffered after complaint was filed. *Beck*, 527 F.3d at 862; *see Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006) ("[f]iling a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time") (quoting *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981)). Rebutting the presumption of independent prosecutorial judgment requires that "the plaintiff prove the absence of probable cause." *Id.* at 864.

The Court has found that McCoy and Youngman, who commanded the Task Force, reasonably determined that probable cause existed to arrest Plaintiffs. Based on this finding, the Court concludes that Plaintiffs have failed to rebut the presumption that the tribal

prosecutor's judgment to prosecute was independent. The prosecutor herself has attested that her decision prosecute Plaintiffs was made independently and in good faith, based on the information she received from the Task Force. Her independence is further demonstrated by that fact that she came to believe Plaintiffs were "overcharged" and moved to modify the charges before arraignment. (Doc. 167, Ex. 5.)

The Individual Defendants have satisfied their burden of establishing that there is no genuine issue of material fact to be resolved regarding their immunity or the existence of probable cause. *See Moreno*, 431 F.3d at 638. Therefore, their summary judgment motion will be granted.

## DEFENDANT UNITED STATES' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' FTCA CLAIM

In their FTCA claim, Plaintiffs allege that the negligent and/or grossly negligent acts and omissions of the Individual Defendants constituted false arrest, malicious prosecution, abuse of process, and aiding and abetting the tortious conduct of others. (Doc. 126 at 30.) The United States moves for summary judgment on the grounds that Plaintiffs' FTCA claims are barred by the discretionary function exception, by the immunity provision of Arizona's mandatory reporting statute, A.R.S. § 13-3620, and by the existence of probable cause at the time of the arrests.[4] (Doc. 168.)

### I.    Discretionary Function Doctrine

The United States can be sued only to the extent that it has waived its sovereign immunity. *Reed v. United States Dep't of Interior*, 231 F.3d 501, 504 (9th Cir. 2000). The FTCA grants such a waiver and authorizes suits against the United States

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to

---

[4]    Based on its analysis of these issues and its findings with respect to probable cause, the Court will not address Defendants' additional arguments.

the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

However, there are exceptions to this broad waiver of sovereign immunity, one of which is the discretionary function exception, which maintains the United States' immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved is abused." 28 U.S.C. § 2680(a). "The discretionary function exception marks the boundary between Congress' willingness to impose tort liability on the United States and the desire to protect certain decision-making from judicial second-guessing." *Conrad v. United States*, 447 F.3d 760, 764 (9th Cir. 2006) (citing *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988)).

In assessing whether the discretionary function exception applies to a particular case, courts look to "the nature of the conduct, rather than the status of the actor," and assess the conduct in two ways. *Berkovitz*, 486 U.S. at 536 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984)). The first issue is whether the action taken by the government employee is a matter of judgment. *Id.* ("conduct cannot be discretionary unless it involves an element of judgment or choice"). The discretionary function exception will not apply if there is a statute, regulation, or policy mandating particular conduct by a government employee which does not allow for the exercise of discretion in fulfilling that mandate. *Id.*

Once it has been determined that the challenged conduct involves an element of discretion, the question is whether the discretion involves the type of decision-making that the discretionary function exception was designed to protect. *Id.* The purpose of the discretionary function exception is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 536-37 (quoting *Varig Airlines*, 467 U.S. at 814). Therefore, the exception applies if the discretionary decision is a permissible exercise of

- 14 -

policy judgment. *Id.*

Another exception to the FTCA's waiver of sovereign immunity is for intentional torts, including malicious prosecution and false arrest. 28 U.S.C. § 2680(h). However, this exception does not apply to intentional torts committed by federal "investigative or law enforcement officers." *Id.* The Ninth Circuit and other courts have interpreted § 2680(h) as being subject to the discretionary function proviso of § 2680(a). *See Gasho v. United States*, 39 F.3d 1420, 1433 (9th Cir. 1994); *Medina v. United States*, 259 F.3d 220, 225, 229 (4th Cir. 2001); *Pooler v. United States*, 787 F.2d 868, 872–73 (3d Cir. 1986); *Gray v. Bell*, 712 F.2d 490, 507–08 (D.C.Cir. 1983). Thus, "to maintain an FTCA claim for an intentional tort, a plaintiff must first clear the 'discretionary function' hurdle." *Gasho*, 39 F.3d at 1433. "If a defendant can show that the tortious conduct involves a 'discretionary function,' a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort under section 2680(h)." *Id.* at 1435.

The government bears the burden of proving that the discretionary function exception applies. *Myers v. United States*, 652 F.3d 1021, 1028 (9th Cir. 2011). As set forth below, the Court finds that the United States has satisfied that burden.

**II.     Analysis**

**A.     Application of discretionary function exception**

As the Ninth Circuit has explained, "investigations by federal officers clearly involve the type of policy judgment protected by the discretionary-function exception." *Alfrey v. United States*, 276 F.3d 557, 566 (9th Cir. 2002) (citing *Sabow v. United States*, 93 F.3d 1445, 1452 (9th Cir. 1996)); *see Sloan v. United States Dep't of Housing and Urban Dev.*, 236 F.3d 756, 760 (D.C. Cir. 2001) ("The decision to initiate a prosecution has long been regarded as a classic discretionary function."); *Horta v. Sullivan*, 4 F.3d 2, 21 (1st Cir. 1993) ("although law enforcement agents have a mandatory duty to enforce the law, decisions as to how best to fulfill that duty are protected by the discretionary function exception to the

FTCA"); *Pooler*, 787 F.2d at 871 (3d Cir. 1986) ("Decision making as to investigation and enforcement, particularly when there are different types of enforcement action available, are discretionary judgments.") (interior quotation omitted). The BIA Task Force, in pursuing its investigation of the rapes on the Reservation, was exercising the type of policy judgments protected by the discretionary function exception. *See Sabow*, 93 F.3d at 1453 ("Investigations by federal law enforcement officials . . . clearly require investigative officers to consider relevant political and social circumstances in making decisions about the nature and scope of a criminal investigation" and are the types of "social and political judgments that Congress meant to shield from FTCA challenges").

Plaintiffs contend, however, that the discretionary function exception is inapplicable in this case because "Defendants did not have discretion to declare that probable cause existed when their discretionary decisions resulted in no reasonable belief that either Reed or Dupris committed the offenses for which they were charged." (Doc. 192 at 6.) In support of this allegation, Plaintiffs assert that the investigation was "shabby" and that the BIA rushed to solve the case so that it could pay out reward bonuses and gain leverage in its attempt to shut down the tribal police force. (*Id.* at 2, 12.) These arguments are unsupported and unpersuasive.

First, a review of the relevant cases demonstrates that decisions to arrest and prosecute Reed and Dupris were the product of discretionary functions, and thus protected under § 2680(a), notwithstanding Plaintiffs' criticisms of the quality of the investigation. "Congress did not intend to provide for judicial review of the quality of investigative efforts." *Pooler*, 787 F.2d at 871; *see Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) ("Under the FTCA, negligence in performing discretionary functions" is not actionable."); *Sabow,* 93 F.3d at 1452 n. 6, 1453-54; *Kerns v. United States*, No. CV-04-1937-PHX-NVW, 2007 WL 552227, at *21 (D. Ariz. Feb. 21, 2007), *rev'd on other grounds*, 2009 WL 226207 (9th Cir. Jan. 28, 2009) ("The discretionary function exception has been applied to shield review of

the negligent investigation and arrest of a person later determined to be innocent of the charged offense."). Courts have applied the exception despite investigative deficiencies, including mishandling, altering, and failing to obtain and preserve physical evidence, irregularities in the autopsy and interviewing procedures, and failure to consider all the evidence, *Sabow*, 93 F.3d at 1452–54; failing to "verify, corroborate or surveil" the drug transactions that led to the plaintiffs' arrest and prosecution, *Pooler*, 787 F.2d at 869; failing to interview a certain witness, conduct a line-up or show the witness a photo-array, or otherwise further investigate a claim of mistaken identity, *Valdez v. United States*, 08 Civ. 4424(RPP), 2009 WL 2365549 (S.D.N.Y. July 31, 2009); conducting a "haphazard" investigation to quickly solve a "high visibility" case and showing witnesses photos of the plaintiff that were 15 to 20 years old, *Rourke v. United States*, 744 F.Supp. 100, 102 (E.D.Pa. 1990).

The Court rejects the argument that the Task Force investigation was deficient in a manner that separates it from these cases and necessitates a finding that discretionary function immunity does not apply. Plaintiffs' allegations that the investigation was not only shabby but pursued in bad faith are neither supported by the record nor relevant, given the Court's conclusion, set forth above, that probable cause existed to arrest and prosecute Dupris and Reed.

This is not a case where officers "act[ed] entirely outside the bounds of the policy considerations supporting application of the discretionary function exception." *Casillas v. United States*, CV 07-395-DCB (HCE), 2009 WL 735193, at *15 (D.Ariz February 11, 2009) The Task Force agents did not "depart[] from the duties of an investigator." *Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987). To the contrary, it was through the performance of their investigative duties that they reached their probable cause determination.

There is a clear contrast between the investigation undertaken by the Task Force and cases where courts have found that the government forfeited the protections of the

discretionary function exception. For example, in *Reynolds v. United States*, 549 F.3d 1108, 1112–14 (7th Cir. 2008), the court ruled that the discretionary function exception did not apply to protect two federal government investigators from suit in an action alleging that the agents submitted a knowingly false affidavit to the state prosecutor, resulting in the plaintiff's prosecution and subsequent loss of her job. In *Limone v. United States*, 497 F.Supp.2d 143 (D. Mass. 2007), the court found that the discretionary function exception did not preclude liability where FBI agents suborned perjured testimony, resulting in wrongful murder convictions, and where the FBI concealed information that would have exposed the agents' activities. Finally, in *Patel v. United States*, 806 F.Supp. 873, 876 (N.D. Cal. 1992), the court found that the discretionary function exception did not apply to the officers' decision to burn down a structure while executing a search warrant because the decision was "not based on considerations rooted in social, economic or political policy."

Plaintiffs' criticisms of the Task Force investigation, to the extent they are supported by the record, allege nothing more than the kind of negligence that is subject to protection under the discretionary function doctrine.

The decisions made by the BIA Task Force in its investigation were discretionary and grounded in policy considerations. Therefore, Plaintiffs' FTCA claims are barred by the discretionary function exception. Moreover, the arrest and prosecution of Dupris and Reed were supported by probable cause. No genuine issues of material fact exist regarding these issues. Accordingly, the Court will grant the United States' motion for summary judgment.

**B.     A.R.S. § 13-3620(J)**

Under 28 U.S.C. § 1336(b), FTCA actions are governed by "the law of the place where the act or omission causing the injury occurred." *Mundt v. United States*, 611 F.2d 1257, 1259 (9th Cir. 1980). The government is only liable to the same extent as a private person would be under state law. 28 U.S.C. § 1346(b)(1); *Conrad*, 447 F.3d at 767; *see* 28 U.S.C. § 2674 (the United States is liable "in the same manner and to the same extent as a

private individual in like circumstances"). "Even if the conduct entails uniquely governmental functions, the court is to examine the liability of private persons in analogous situations." *Tekle v. United States*, 511 F.3d 839, 852 (9th Cir. 2007) (citing *United States v. Olson*, 546 U.S. 43, 45–46 (2005)). Therefore, Arizona law is used to determine the United States' tort liability in this matter. This includes applying the same immunities Arizona affords a private person. *Id.*; *see Dalrymple v. United States*, 460 F.3d 1318 (11th Cir. 2006); *Barnes v. United States*, 448 F.3d 1065 (8th Cir. 2006); *In re Fema Trailer Formaldehyde Products Liability Litigation*, 719 F.Supp.2d 677, 684 (E.D.La. 2010).

Pursuant to A.R.S. § 13-3620(A), (J), any person, including a police officer, investigating allegations of sexual assault of a minor, is immune from civil liability arising from the investigation unless they acted with malice.[5] *See Crawford v. City of Phoenix*, CV 05-2444-PHX-JAT, 2007 WL 1140396, at *2 (D. Ariz. Apr. 16, 2007). Malice is defined as "a wish to vex, annoy or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." A.R.S. § 1-215(2).

There is no dispute that the BIA Task Force was investigating sexual assaults committed against minors. Therefore, absent a showing of malice, the United States would be entitled to immunity under § 13-3620(J).

Plaintiffs contend that genuine issues of material fact exist as to whether the United States acted with malice. (Doc. 192 at 7–15.) However, Plaintiffs' specific allegations of malice, which ascribe to Task Force investigators various ulterior motives, such as time constraints and financial incentives (*see* Doc. 192 at 11–15), are conclusory, speculative, and unsupported in the record. Therefore, they are insufficient to raise a genuine issue of material fact. *See Anderson*, 477 U.S. at 257; *Jeffers v. Gomez*, 267 F.3d 895, 908 (9th Cir. 2001).

---

[5] Plaintiffs contend that A.R.S. § 13-3620 is unconstitutional under the state constitution's anti-abrogation clause. (Doc. 192 at 8–11.) However, because no court has found § 13-3620 unconstitutional, its immunity provisions applied to the United States under 28 U.S.C. § 2674.

Moreover, as discussed above, the arrests were supported by probable cause, which undermines any contention that they were undertaken with a "wish to vex, annoy or injure another person, or an intent to do a wrongful act."

For the same reasons, tribal officers Massey and Anderson, who joined this aspect of the United States' motion for summary judgment, are also entitled to immunity under A.R.S. § 13-3620(J).

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FEDERAL EMPLOYEE STATUS OF TRIBAL OFFICER DEFENDANTS

Plaintiffs allege that Perphelia Massey and Joshua Anderson were "federal employees" for purposes of the FTCA and *Bivens*, and seek summary judgment on the issue. (Doc. 170.) In response, the Federal Defendants contend that the motion should be denied as moot because they do not contest the federal employee status of Massey and Anderson for purposes of the FTCA. (Doc. 185 at 2.) In the alternative, the Federal Defendants argue that the motion should be denied and the FTCA claims dismissed "because the actions by the Defendants do not meet the requirements of the proviso to the intentional tort exception of the FTCA." (*Id.*) The Federal Defendants take no position on whether Massey and Anderson are subject to liability under *Bivens*.[6] (*Id.*, n.2.)

### I.  28 U.S.C. § 2680(h) and *Bivens*

As noted above, 28 U.S.C. § 2680(h), which establishes immunity for claims based on intentional torts such as false arrest and malicious prosecution, contains a proviso waiving immunity for intentional torts committed by any "investigative or law enforcement officer," defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." The parties do not dispute that "[a]bsent the power to enforce federal law, tribal officers are not federal investigative

---

[6]     The Federal Defendants are represented by the United States Department of Justice, which does not represent Massey or Anderson in their individual capacities. (Doc. 185 at 2, n.2.)

or law enforcement officers." *Trujillo v. United States*, 313 F.Supp.2d 1146, 1150 (D.N.M. 2003) (citing *Dry v. United States*, 235 F.3d 1249 (10th Cir. 2000)); *see Russell v. United States*, No. CV-08-8111-PCT-MHM, 2009 WL 2929426, at *1 (D.Ariz. Sept. 10, 2009).

In *Bivens*, 403 U.S. 388, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 66 (2001). "It is widely accepted that *Bivens* provides a cause of action only against an official 'acting under color of federal law.'" *Pollard v. Geo Group, Inc.*, 607 F.3d 583, 588 (9th Cir. 2010) (citing *Bivens*, 403 U.S. at 389); *see Boney v. Valline*, 597 F.Supp.2d 1167, 1172 (D.Nev. 2009) (under *Bivens* plaintiff must show that the constitutional violation was "committed by a federal actor").

## II.  Analysis

Massey and Anderson were tribal police officers assigned to the Task Force. Massey arrested Dupris, and Anderson arrested Reed. Plaintiffs assert that Massey and Anderson, by virtue of their participation with the BIA Task Force, were federal law enforcement officers for purposes of § 2680(h). Plaintiffs' arguments in support of this proposition are not supported by the record or relevant legal authority.

First, the record shows that Massey and Anderson were not given Special Law Enforcement Commissions ("SLEC") from the BIA, deputized by the BIA, or otherwise authorized to make arrests under federal law. (Doc.186, Exs. 1, 2.) In addition, contrary to Plaintiffs' assertion, the fact that a 93-638[7] contract existed between the BIA and the Tribe for the provision of law enforcement services does not "automatically confers federal law enforcement authority upon the officers in tribal police departments." *Trujillo*, 313 F.Supp.2d at 1150; *see Buxton v. United States*, No. CIV. 09-5057-JLV, 2011 WL 4528329 (D.S.D.

---

[7]    The Indian Self-Determination and Education Assistance Act, Publ.L. No. 93-638, authorizes the BIA to provide law enforcement services on reservations.

Sept. 28, 2011) (explaining that a "separate process exists for conferring federal law enforcement authority on tribal police officers"); *Bob v. United States*, No. Civ. 07-5068, 2008 WL 818499, at *2 (D.S.D. March 26, 2008) (holding that even though tribal defendants may be considered federal employees under the FTCA, they were not federal "investigative or law enforcement officers" in light of government's affidavit stating that none of the tribal officers involved in the disputed incident held an SLEC from the BIA); *Locke v. United States*, 215 F. Supp.2d 1033, 1038–39 (D.S.D. 2002).

As further evidence that Massey and Anderson were federal officers, Plaintiffs cite the fact that they assisted in the execution of federal search warrants. This level of participation is insufficient to establish their status as federal law enforcement officers or investigators under § 2680(h). In *Locke*, for instance, the court found that neither the existence of a 638 contract nor the allegation that "in practice" tribal officers assisted in executing federal warrants or making arrests on federal violations suggested that the officer was "anything other than a Tribal police officer." 215 F. Supp.2d at 1038–39.

Based on these factors, the Court also finds that Massey and Anderson, when they arrested Plaintiffs, were not acting under the color of federal law for purposes of liability under *Bivens*. *See Boney*, 597 F.Supp.2d at 1186; *Romero v. Peterson*, 930 F.2d 1502, 1507 (10th Cir. 1991) (to be federal officers entitled to qualified immunity from liability in *Bivens* action, defendants must have been acting as employees or agents of federal government or using their federal badges or other indicia of authority in furtherance of business of another entity or person). Massey and Anderson were tribal officers who arrested Plaintiffs on tribal charges. As noted, the record indicates that they were not authorized to arrest suspects on federal charges. (Doc.186, Exs. 1, 2.)

Plaintiffs are not entitled to summary judgment on the issue of the federal employee status of Massey and Anderson.

**CONCLUSION**

In their motions for summary judgment, the Individual Defendants and the United States have shown that there are no genuine disputes as to any material facts and they are entitled to judgment as a matter of law under Fed. R. Civ. P. 56(a). Plaintiffs have failed to make such a showing in their partial motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** granting the Individual Defendants' Motion for Summary Judgment (Doc. 169).

**IT IS FURTHER ORDERED** granting the United States' Motion for Summary Judgment as to Plaintiffs' FTCA Claim (Doc. 168).

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Partial Summary Judgement (Doc. 170).

**IT IS FURTHER ORDERED** dismissing the Fourth Amended Complaint (Doc. 126).

**IT IS FURTHER ORDERED** denying as moot Defendant's Motion in Limine to Exclude the Expert Testimony of Mr. Robertson, Dr. Lyman, and Dr. Davis (Doc. 162).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

DATED this 9th day of January, 2012.

Paul G. Rosenblatt
United States District Judge